**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KAREN PERRY,

               Plaintiff,

                                        Case No. 3:18-cv-272-J-JRK

vs.

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

               Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Karen Perry ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability income benefits ("DIB"). Plaintiff's alleged inability to work is the result of degenerative joint disease, radiculopathy in the left lower extremity, "bilateral lower numb[n]ess," impingement syndrome in the right shoulder, and depression. See Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed May 8, 2018, at 61, 72-73, 253 (emphasis omitted). Plaintiff filed an application for DIB on July 28, 2014,[2] alleging an onset disability

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 8), filed May 8, 2018; Reference Order (Doc. No. 10), entered May 9, 2018.

[2]     Although actually completed on July 28, 2014, see Tr. at 174, the protective filing date of the application is listed elsewhere in the administrative transcript as June 17, 2014, see, e.g., Tr. at 61, 72.

date of October 1, 1997. Tr. at 174.[3] Shortly after, the alleged disability onset date was apparently amended to October 31, 2013. See Tr. at 61, 73. The application was denied initially, Tr. at 60, 61-70, 83-85, 86, and upon reconsideration, Tr. at 71, 72-82, 93-97, 98.

On July 7, 2017, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 33-59. Plaintiff was forty-three years old at the time of the hearing. Tr. at 38. The ALJ issued a Decision on September 6, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 11-22.

On December 20, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On February 22, 2018, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following arguments: 1) "the ALJ erred by failing to discuss [Plaintiff's] neck impairment"; 2) "the ALJ erred by failing to mention the weight that he afforded the opinions of the [treating] physicians at the [Jacksonville Spine C]enter" ("Spine Center"); and 3) "the ALJ failed to adequately explain the rejection of the [functional capacity evaluation ('FCE')]" of a physical therapist.[4] Memorandum in Support of Complaint (Doc. No. 14; "Pl.'s Mem."), filed June 7, 2018, at 6 (emphasis and some capitalization

---

[3]    Plaintiff also filed an application for supplemental security income ("SSI") on July 28, 2014. Tr. at 178. Plaintiff's appeal, however, concerns only her application for DIB, and the administrative transcript includes no denials of the SSI application and no final decision of the Commissioner regarding the SSI application. The parties do not discuss this application in their filings.

[4]    The signature of the individual who completed the FCE is illegible, and the individual did not print his/her name anywhere in the FCE. See Tr. at 335-37, 479-81 (duplicate), 501 (duplicate of first page). Given the nature of the opinions, however, it appears that it was completed by a physical therapist. Also, the individual's signature appears to end with "PT." See 335, 479, 501.

omitted). On August 20, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 13-22. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 31, 2013, the alleged onset date." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: post laminectomy syndrome of the lumbar spine, degenerative disk disease (DDD), depression, and posttraumatic stress

---

[5]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

disorder (PTSD)." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk 4 hours in an 8-hour workday and sit 6 hours in an 8-hour workday, push/pull of hand controls is up to the lift/carry limit. She can occasionally use foot controls. She can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and frequently balance. She can never climb ladders, ropes or scaffolds. She can never work around vibrations, unprotected heights or dangerous moving machinery, and no commercial driving. She can perform simple tasks, concentrate and perform them and remember instructions for 2-hour periods across an 8-hour workday, five-day workweek with all customary breaks. She can have occasional contact with the general public, coworkers and supervisors, and infrequent work changes.

Tr. at 15-16 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 20 (emphasis and citation omitted); see Tr. at 20-21. At step five, after considering Plaintiff's age ("39 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 21 (citation omitted), including "folder laundry," "inspector and hand packager," and "shipping and receiving weigher," Tr. at 22. The ALJ concluded that Plaintiff "has not been under a disability . . . from October 31, 2013, through the date of th[e D]ecision." Tr. at 22 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The three overall issues Plaintiff raises are addressed below in the following modified sequence: 1) whether the ALJ erred in failing to assign a weight to the opinions of the treating physicians at the Spine Center; 2) whether the ALJ adequately explained his rejection of the FCE; and 3) whether the ALJ erred in failing to discuss Plaintiff's neck impairment. See Pl.'s

Mem. at 6-10. The law applicable to the issues regarding the Spine Center opinions and the FCE is set out below. Then, each argument is addressed in turn.

## A. Law Regarding Medical Opinions

The Regulations[6] establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[6]   On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claim, unless otherwise noted.

[7]   "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d

---

[8]     A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

**B. Opinions of Spine Center Physicians**

Plaintiff argues that although the ALJ discussed and considered the treatment notes from the physicians at the Spine Center, "he never indicate[d] the weight that is to be given to these notes." Pl.'s Mem. at 9. Plaintiff also asserts the ALJ erred in discounting the opinion of a particular physician at the Spine Center, Dr. Claudio E. Vincenty, on the grounds that he did not refer Plaintiff to a specialist and that Plaintiff did not request such a referral. Id. Responding, Defendant contends that the ALJ discussed in detail the treatment notes from the Spine Center, and "[n]othing in these treatment notes suggest limitations more restrictive than the ALJ included in the RFC finding." Def.'s Mem. at 12 (citation omitted); see id. at 11-12. As to Dr. Vincenty's opinion, Defendant argues that "the ALJ never stated that he discounted any opinion from Dr. Vincenty," id. at 10, and that "the ALJ did not mention Dr. Vincenty's failure to refer [Plaintiff] to a specialist as a reason to discount a medical opinion," Id. n.5.

Although the ALJ did not state the weight assigned to the opinions contained in the treatment notes from the Spine Center, the undersigned finds that the ALJ accepted the impressions and diagnoses contained in them. See Tr. at 18-19.[9] Citing treatment notes from the Spine Center, the ALJ indicated that Plaintiff has "5/5 normal muscle strength" and is coordinated, that there is "no impairment of tandem walking or walking on her toes or heels," and that her x-rays "showed no fracture or dislocation of the sacrum or coccyx." Tr. at 19; see Tr. at 417 (treatment note); Tr. at 333 (x-ray findings). The ALJ noted that Plaintiff returned to the Spine Center in October 2014 and November 2014 for pain medication refills. Tr. at 19; see Tr. at 354-58 (treatment notes). The ALJ observed that although Plaintiff complained

---

[9]    As explained below, the ALJ discounted the opinions contained in the FCE from the Spine Center.

of tingling in her left leg, "there [is] no syncope or weakness" in her lower and upper extremities. Tr. at 19; see Tr. at 354, 357. Plaintiff does not point to any medical opinions in the treatment notes from the Spine Center that are inconsistent with the ALJ's RFC determination, and the Court finds none.[10] Upon review, it is clear that the treatment notes from the Spine Center are consistent with the ALJ's analysis and RFC finding. Accordingly, any error in the ALJ's failure to specifically assign weight to the opinions expressed in the treatment notes is harmless. See, e.g., Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (finding that "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

As to Plaintiff's assertion that the ALJ discredited the opinion of Dr. Vincenty—a physician at the Spine Center—because he did not refer Plaintiff to a specialist and Plaintiff did not request any such referral, the undersigned finds that the ALJ did not discredit Dr. Vincenty's opinion at all. It is unclear what opinion Plaintiff is referring to (especially because she first argues the ALJ did not assign a weight to any of the opinions from the physicians at the Spine Center). The ALJ merely observed that "[w]hile [Plaintiff] continues to note no change in symptoms, Dr. Vincenty never referred [Plaintiff] to a specialist in orthopedics or neurosurgeon[,] and [Plaintiff] has never requested referral." Tr. at 17 (citation omitted). The ALJ made this statement when summarizing the evidence regarding Plaintiff's alleged back and hip pain; he was not discounting any opinion of Dr. Vincenty. Tr. at 17. If anything, the

_____

[10]     To the extent Plaintiff points to the "numerous references to pain" in the treatment notes, Pl.'s Mem. at 9, the ALJ found that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record," Tr. at 16. Plaintiff does not challenge the ALJ's evaluation of Plaintiff's subjective complaints.

ALJ was describing the inconsistency between Plaintiff's statements regarding her subjective symptoms and the nature of her treatment.

## C. The FCE

Plaintiff contends that "[t]he ALJ never adequately and with the required specificity discusse[d] how the conclusions from the FCE were inconsistent with the medical records, including from the [Spine] Center." Pl.'s Mem. at 10. Responding, Defendant argues that "the ALJ proffered several legally sufficient reasons for giving little weight to the FCE." Def.'s Mem. at 13.

On May 29, 2014, apparently a physical therapist completed an FCE containing opinions regarding the effects of Plaintiff's impairments on Plaintiff's ability to perform work-related functions. See Tr. at 335-37, 479-81 (duplicate), 501 (duplicate of first page). A certified physician assistant ("PA-C") authorized the evaluation. See Tr. at 335, 479, 501 (signature of PA-C at bottom of page, dated June 3, 2014).

The undersigned finds no error in the ALJ's evaluation and weighing of the opinions in the FCE. The ALJ summarized the opinions in the FCE and discounted them in part because they are "inconsistent with the overall medical records, including from the [Spine Center]." Tr. at 19; see Tr. at 18-19.[11] Contrary to Plaintiff's assertion, the ALJ provided specific examples of medical evidence that is inconsistent with the opined limitations in the FCE. See Tr. at 18-19. In discounting the FCE, the ALJ also properly considered that the FCE was "signed off . . . by a PA-C (probably a physician assistant) and not a doctor." Tr. at 20; see Social Security Ruling 06-03p, 2006 WL 2329939, at *5 (stating that "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving

---

[11] The ALJ first indicated he gave the opinions in the FCE "very limited weight," Tr. at 19, and later stated he gave them "little weight," Tr. at 20. This does not affect the undersigned's overall analysis and opinion.

that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals'); <u>Farnsworth v. Soc. Sec. Admin.</u>, 636 F. App'x 776, 783 (11th Cir. 2016).[12] The ALJ further stated that the restrictive limitations in the FCE "are simply not supported by the [Plaintiff's] activities of daily living." Tr. at 20; <u>see</u> Tr. at 19 (describing Plaintiff's activities of daily living). The ALJ also observed that the opinions in the FCE "were based upon subjective statements and self-limitation under the control of [Plaintiff]." Tr. at 20. As noted above, <u>supra</u> note 10, the ALJ found that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record," Tr. at 16, and Plaintiff does not challenge the ALJ's evaluation of Plaintiff's subjective complaints. Accordingly, the ALJ provided specific reasons, supported by substantial evidence, for discounting the opinions in the FCE.

## D. Plaintiff's Neck Impairment

Plaintiff contends that because the ALJ did not "discuss any cervical spine treatment or any limitations that may be associated with that impairment," the hypothetical given to the VE did not contain any limitations for Plaintiff's "neck[-]related impairment." Pl.'s Mem. at 8. Responding, Defendant asserts the ALJ was not required to discuss Plaintiff's neck impairment because Plaintiff "entirely omitted a neck impairment" when she applied for DIB, and at the hearing, she "failed to raise any problems specifically associated with her neck." Def.'s Mem. at 6 (citations omitted).

---

[12] As noted above, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. <u>See</u> <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Under the new regulations, licensed physician assistants are considered acceptable medical sources. <u>See id.</u> at 5863; 20 C.F.R. § 404.1502(a)(8). The new regulations, however, do not apply in Plaintiff's case because Plaintiff filed her claim before March 27, 2017.

Plaintiff's contention that the ALJ erred in failing to discuss her neck impairment is unavailing. As Defendant accurately notes, Plaintiff did not allege any neck-related impairments when she filed her application for DIB or at the hearing before the ALJ. See generally Tr. at 33-59, 61, 72-73, 253. Accordingly, the ALJ was not required to consider or discuss any neck-related impairments. See Duffy v. Comm'r of Soc. Sec., 736 F. App'x 834, 837 (11th Cir. 2018) (finding ALJ had no duty to consider an impairment that the plaintiff did not allege in her application for benefits or at the hearing); Sullivan v. Comm'r of Soc. Sec., 694 F. App'x 670, 671 (11th Cir. 2017) (same).

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 25, 2019.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:
Counsel of record